**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| | Case No. 13-41947-MSH |
| JOSEPH C. VANBUSKIRK AND | |
| PATRICIA A. VANBUSKIRK | |
| Debtors | |

**MEMORANDUM OF DECISION ON THE TRUSTEE'S OBJECTION TO EXEMPTION**

This matter arises from the objection of Steven Weiss, the chapter 7 trustee of the estate of the debtors in this case, Joseph C. VanBuskirk and Patricia A. VanBuskirk, to the homestead exemption claimed by them in their home identified as unit 1, 11 Moffa Lane, Marlborough, Massachusetts.

**Facts**

The facts are drawn from the parties' agreed statement and relevant documents attached to various pleadings, the authenticity of which the parties have not questioned.

The Debtors acquired real property located at 11 Moffa Lane in Marlborough, Massachusetts from Ms. VanBuskirk's parents in 1985. Title to the property was taken by the VanBuskirks as tenants by the entirety. On September 6, 1990, the VanBuskirks conveyed the property to themselves as trustees of the A One Forty Nine Realty Trust. The trust was subsequently renamed the A 111 Realty Trust (the "Realty Trust"). The VanBuskirks have been the only trustees of the Realty Trust from its inception.

The declaration of trust establishing the Realty Trust invests the VanBuskirks as trustees with broad powers including the power to sell, lease, mortgage and improve the property of the trust, and provides that "the Trustee shall also have every possible power and right to deal with the

1

Trust property and estate, which an individual can have over his own property as fully and completely as if such individual powers were herein expressed." The rights of the beneficiaries under the declaration of trust are limited to the right "to receive any distribution of income or principal or Trust property made by the Trustee in his discretion hereunder; and to the Trust property on the termination of the Trust, unless said Trust is revoked or otherwise amended by said Trustee." The declaration of trust calls for the Realty Trust to terminate thirty days after the death, resignation or incapacity of both trustees.

>   Paragraph 7 of the declaration of trust provides:
>
>   This Declaration of Trust, and the Trust hereby created, may at any time, or from time to time, be altered or amended in any respect or respects, by the Trustee acting hereunder, each alteration or amendment, if any, acknowledged by him and recorded in the Registry of Deeds for the County in which this instrument is recorded. The power to alter or amend the Declaration of Trust and the Trust hereby created, shall not be exhausted by a single exercise thereof, but may be exercised from time to time, and no exercise of said power shall prevent the subsequent exercise of the power to terminate the Trust.

The original beneficiaries of the Realty Trust were three of the VanBuskirks' children: Joseph, who to avoid confusion with the debtor will hereafter be referred to as "Joseph P," Scott, and Peter. The declaration of trust provides that the beneficiaries "have no right or voice in the control or management of the Trust or the Trust property…."

On October 23, 1998, the VanBuskirks as trustees of the Realty Trust divided the Moffa Lane property into three condominiums, known as units 1, 2 and 3 with each condominium consisting of a single family house. The VanBuskirks and their son Scott, who is disabled, reside in unit 1.

By an amendment dated August 18, 2003, the VanBuskirks as trustees amended the Realty Trust declaration to change the allocation of the beneficial interests in the Trust. Scott, Peter and

2

Joseph P., were named as one-third beneficial interest holders of unit 1. Joseph P. was named the sole beneficiary of unit 2 and Peter was designated the sole beneficiary of unit 3.

On December 24, 2004, when they held only a legal interest in unit 1 by virtue of their status as trustees of the Realty Trust, the VanBuskirks recorded a declaration of homestead for elderly or disabled individuals. The declaration does not refer to the VanBuskirks as trustees of the Realty Trust and it is signed by them individually.[1]

On October 4, 2011, the VanBuskirks created the SRVB Family Trust (the "Family Trust"). In addition to being the settlors and grantors, they are the trustees and the beneficiaries of the Family Trust during their joint lives. The instrument establishing the Family Trust provides that upon the death of the VanBuskirks, the Family Trust's property is to be held in trust for Scott

---

[1] The homestead declaration looks like this and states:

### DECLARATION OF HOMESTEAD

#### Elderly or Disabled

KNOW ALL MEN BY THESE PRESENTS that We, Joseph C. VanBuskirk and Patricia A. VanBuskirk, husband and wife, of 11 Moffa Lane, Unit 1, Marlborough, Massachusetts, as Tenants by the entirety, as the owners of real estate described in Quitclaim Deed recorded at the Middlesex South Registry of Deeds in Book 29273, Page 132, being over age 62 and entitled to an estate of homestead in the land and buildings hereinafter described do hereby declare that we own and possess and occupy said premises as a residence and homestead under Massachusetts General Laws, Chapter 188, Sec. 1A, as amended, and claim all rights and benefits conferred by said Chapter 188.

The land and buildings in which said homestead is claimed is described as follows: See Exhibit "A" attached hereto.

Witness our hands and seals this 13th day of September, 2004.

_/s/_____                                    ___/s/_____
Joseph C. VanBuskirk                                            Patricia A. VanBuskirk

3

and upon his death, it is to pass to the VanBuskirks' grandchildren. Article X of the Family Trust provides that "[t]his Trust is revocable and the Grantors expressly reserve any and all rights which they may have, by operation of law or otherwise, to revoke, alter, amend or otherwise change this Declaration of Trust or any provision hereof." The Family Trust and the Realty Trust contain spendthrift provisions.

On October 4, 2011, the VanBuskirks as trustees of the Realty Trust amended the Realty Trust declaration yet again to alter the beneficial interests in unit 1, dividing them into four equal shares held by Peter, Joseph P., daughter Lisa A. Sullivan and the Family Trust. None of the VanBuskirk children except Scott, who is not a beneficiary, lives in unit 1. There have been no further amendments to the Realty Trust and no amendments at all to the Family Trust. Both Trusts are governed by Massachusetts law. For all purposes relevant to this matter, the only asset owned by the Realty Trust is unit 1 and the only asset owned by the Family Trust is a 25% beneficial interest in the Realty Trust.

On July 31, 2013, the VanBuskirks filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*) commencing this case. On schedule A-real property, of the schedules of assets and liabilities accompanying their petition, the VanBuskirks listed their interest in unit 1 of the 11 Moffa Lane property as having a value of $286,410.00, based on a valuation they obtained from zillow.com. They described their interest in the property as a "fiduciary" interest only and further stated that they "are the trustees for the benefit of designated beneficiaries, none of which are Debtor [sic]." They repeated this language on schedule C-property claimed exempt, on which they claimed a homestead exemption in unit 1 in the amount of $131,705.58 pursuant to "MASS. GEN. LAWS ch. 188, § 1."

4

The chapter 7 trustee filed an objection to the homestead exemption claim prompting the VanBuskirks to amend schedules A and C. On amended schedule A they described their interest in unit 1 as a "beneficial interest" stating:

> Debtors are Trustees for the benefit of designated beneficiaries, one of which is the SRVB Family Trust which holds a 25% interest in the A111 Realty Trust. Debtors are the life beneficiaries of the SRVB Family Trust. The market value of Debtors [interest] does not include a determination of the vlaue [sic] of Debtors [sic] life estate, but is, instead, based on the higher market value. Market value is based on Broker's opinion based on comparable "Sold' and "For sale" units.

The VanBuskirks valued their interest in unit 1 at $64,500.00, which they claimed was one-fourth of its total value.[2] On their amended schedule C, the VanBuskirks sought to exempt their interest in unit 1 in the amount of $125,000.00, the full amount of the so-called automatic homestead exemption allowed by MASS. GEN. LAWS c.188, § 4.

The chapter 7 trustee filed an objection to the amended homestead exemption on the grounds that the VanBuskirks should not be entitled to any homestead exemption in unit 1 or in the alternative, if they are entitled to an exemption, the amount of the exemption should be limited to $31,250.00 which is one-fourth of $125,000.00

**Positions of the Parties**

The chapter 7 trustee argues that the VanBuskirks are not entitled to a homestead exemption because they are not "owners" of unit 1 as that term is defined in the Massachusetts homestead statute. Specifically, the chapter 7 trustee asserts that the VanBuskirks have no direct interest in unit 1, only an interest in the Family Trust, which has a 25% beneficial interest in the

---

[2] The parties do not agree as to the value of unit 1 but the question of its value is not currently before me. Unit 1 is encumbered by a mortgage in the approximate amount of $154,704.42.

5

Realty Trust which owns unit 1. This connection, in the chapter 7 trustee's view, is too attenuated to qualify the VanBuskirks as owners within the meaning of the Massachusetts homestead statute.

Why, it would be reasonable to ask, is the chapter 7 trustee bothering to object to the VanBuskirks' homestead exemption in property he claims they don't even own? The answer is the trustee believes that by exercising certain powers available to him he can come to own unit 1 or at least cause it to be sold and retain the net sale proceeds for the benefit of the bankruptcy estate free, he hopes, of any homestead exemption claim. Relying on *Nickless v. Lipp (In re Lipp)*, Adv. Pro. 08-4056, 2009 WL 2032127 (Bankr. D. Mass. July 6, 2009), the chapter 7 trustee asserts that the VanBuskirks' rights to amend the Realty Trust including to change its beneficiaries or to terminate or revoke it are now property rights that belong to the VanBuskirks' bankruptcy estate and that only he, the chapter 7 trustee, may exercise those rights. The chapter 7 trustee appears to intend to make himself the trustee of the Realty Trust or at least to exercise the VanBuskirks' rights as trustees and make the VanBuskirks the sole beneficiaries of the Realty Trust or to terminate the Trust as a result of which he will be in a position as the bankruptcy estate representative to sell unit 1. Were I to find that the VanBuskirks are entitled to homestead protection in unit 1 after the chapter 7 trustee amends or terminates the Realty Trust, the chapter 7 trustee asserts as an alternative objection that their exemption be limited to $31,250.00, one-quarter of the automatic homestead amount of $125,000 set forth in the state statute, based on their interest in the Family Trust which on the bankruptcy petition date owned a 25% beneficial interest in the Realty Trust.

During the course of this dispute, the VanBuskirks have asserted multiple, often conflicting positions. They have claimed to have no interest in unit 1 and that it is not property of their bankruptcy estate but also that they own unit 1 in fee simple. They attempt to rely on their

6

recorded 2004 declaration of homestead as protecting 100% of the equity in the property while also claiming entitlement to automatic protection for unrecorded homesteads of $125,000. They have argued both that the Trusts have terminated and that they still exist.

Some of these positions while asserted are not pressed. For example, the VanBuskirks appear to have given up any claim that the 2004 recorded declaration of homestead, which incorrectly identifies them individually as owners of unit 1, has any validity. As to the argument that the Trusts have terminated, at the hearing on the chapter 7 trustee's objection to their exemption claim the VanBuskirks, through counsel, acknowledged that the Trusts remain in effect and thus appear to have dropped that argument as well.

In claiming that unit 1 is not property of their bankruptcy estate, the VanBuskirks maintain that their interest is a personal property interest by virtue of their beneficial interest in the Family Trust. Under this reasoning the VanBuskirks conclude that unit 1 is beyond the reach of the chapter 7 trustee. On the other hand, were I to find that unit 1 is property of their bankruptcy estate, the VanBuskirks say it would be pointless for the chapter 7 trustee to pursue his exemption objection because their interest in the unit and hence their exemption have virtually no value. Mr. and Ms. VanBuskirk maintain that they have only a life estate in unit 1 through their life estate in the Family Trust and, given their ages (73 and 71, respectively), their interests have little real value. In addition, they assert that Scott's remainder interest in the Family Trust coupled with his living in unit 1 further reduces the value of their interests because Scott is disabled and MASS. GEN. LAWS ch. 239, § 9 prevents eviction of a disabled person for one year.[3] Alternatively, the

---

[3] MASS. GEN. LAWS c. 239, § 9 provides in relevant part:

    In an action of summary process to recover possession of premises occupied for dwelling

7

VanBuskirks argue that they are entitled to 100% of the $125,000 automatic homestead exemption in unit 1 because none of the other beneficial owners of the Realty Trust could claim a homestead in the unit as none of them resides in the unit.

The VanBuskirks challenge the chapter 7 trustee's premise that the Realty Trust is revocable, arguing that paragraph 7 of the declaration of trust grants the trustees the power to alter or amend the Realty Trust but not to terminate it. Moreover, they allege that paragraphs 9(c) of the Realty Trust declaration and Article IX.C of the Family Trust instrument require that each respective trustee "discharge his duties and exercise his powers in a fiduciary capacity primarily in the interests of the Beneficiary."[4] Since the beneficiaries will not benefit from payment of the

---

purposes, … where a tenancy has been terminated without fault of the tenant, either by operation of law or by act of the landlord, except by a notice to quit for nonpayment of rent as provided in section twelve of chapter one hundred and eighty-six, a stay or stays of judgment and execution may be granted, as hereinafter provided, for a period not exceeding six months or for periods not exceeding six months in the aggregate, or, for a period not exceeding twelve months or for periods not exceeding twelve months in the aggregate in the case of premises occupied by a handicapped person or an individual sixty years of age or older, as the court may deem just and reasonable, upon application of the tenant or the surviving spouse, parent or child of a deceased tenant if such spouse, parent or child occupied said premises for dwelling purposes at the time when said tenancy was terminated and such occupancy was not in violation of the terms of the tenancy….

[4] The language cited by the VanBuskirks is in Article XI.E of the Family Trust instrument, not Article IX.C which deals with the termination of the Family Trust when all beneficiaries have reached the age of 25 years.

Section E of Article XI, the relevant section, reads in its entirety:

The Trustee shall not be liable to this Trust or to the Grantors and/or Beneficiary(ies) for any mistake or error of judgment in the administration of the Trust so long as he discharges his duties and exercises his powers in a fiduciary capacity primarily in the interest of the Beneficiary, except for a wilful breach of trust.

Paragraph 9 of the Realty Trust is an exculpation clause that does not contain the language quoted by the VanBuskirks. Moreover, paragraph 9 does not contain any letter subsections.

8

VanBuskirks' debts, the VanBuskirks maintain that revocation or termination of the Trusts for purposes of augmenting their bankruptcy estate is beyond the power of the trustees of the Trusts.

Finally, the VanBuskirks argue that their interests in the Realty Trust and the Family Trust cannot be reached by their creditors, and by extension their chapter 7 trustee, as the Trusts contain valid spendthrift provisions.

In response to their life estate argument the chapter 7 trustee argues that the VanBuskirks' life estates in unit 1 are not effective because they were not recorded and thus when he amends the Realty Trust declaration to change the beneficiaries to make the VanBuskirks and by extension their bankruptcy estate the sole beneficiaries of unit 1, the property interest will be a fee interest, not a life estate. As to the VanBuskirks' claim that the Realty Trust is irrevocable, the chapter 7 trustee points to the Massachusetts Uniform Trust Code ("MUTC"), MASS. GEN. LAWS ch. 203E, which provides that a trust is revocable unless its trust instrument contains an express provision making it irrevocable. The VanBuskirks moved to strike references to the MUTC on the grounds that the Realty Trust is a nominee trust and only true trusts are subject to MUTC, an argument raised for the first time in their motion to strike. The chapter 7 trustee disagrees that either trust is a nominee trust. As far as the VanBuskirks' spendthrift trust defense, the chapter 7 trustee retorts that as settlors of the Trusts, the VanBuskirks cannot place their interest in the Trusts' property beyond the reach of their creditors.

## Discussion

To resolve this dispute requires answering three questions. First, under what circumstances does a trust's property become property of a bankruptcy estate, second, may the holders of a beneficial interest in a trust which holds a beneficial interest in another trust which owns a home

9

claim a homestead exemption in the home and third, how is the automatic homestead amount allocated among trust beneficiaries not all of whom reside in the home? The answer to the first question is arrived at easily by following a well-trodden path laid down by others. Not so questions two and three which involve a state statute of teeth-cracking complexity in effect for just over three years and as yet little elucidated by the courts and commentators.

*The Realty Trust's Property as Property of the Bankruptcy Estate*

Bankruptcy Code § 541(a) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Whether a debtor has a legal or equitable interest in property is determined by applicable state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Thus Massachusetts law will determine whether the VanBuskirks' power to amend or terminate the Realty Trust constitutes property of the bankruptcy estate or indeed whether the trust property itself is property of the estate. As the court noted in *Riley v. Tougas (In re Tougas)*, 338 B.R. 164, 173 (Bankr. D. Mass. 2006), a number of courts in the First Circuit have considered the circumstances under which a trust's property or the trustee's power to amend or terminate a trust must be deemed property of a bankruptcy estate. *See, e.g., Marrama v. Degiacomo (In re Marrama),* 316 B.R. 418 (B.A.P. 1st Cir. 2004); *Beatrice v. Braunstein (In re Beatrice),* 296 B.R. 576 (B.A.P. 1st Cir. 2003); *Murphy v. Felice (In re Felice)*, 494 B.R. 160 (Bankr. D. Mass. 2013); *In re Pierce*, 483 B.R. 368 (Bankr. D. Mass. 2012); *Aylward v. Landry (In re Landry),* 226 B.R. 507 (Bankr. D. Mass.1998); *In re Cowles,* 143 B.R. 5 (Bankr. D. Mass.1992).

The analysis turns on whether a trustee has what is referred to as a general power of appointment.

> A power of appointment is defined as an authority (as distinguished from a duty) conferred upon another (donee) by deed or will to appoint or nominate a person or persons (appointee) to receive and enjoy an estate or an income therefrom or from a fund. (Black's Law Dictionary 1054 (5th ed.1979); Simes & Smith, The Law of Future Interests sec. 871, at 345, (2d ed.1956); *In re Estate of Schaaf* (1974), 19 Ill.App.3d 662, 312 N.E.2d 348.) When a power gives the donee the right to choose anyone to enjoy the property, including the donee, a general power of appointment is created. *In re Estate of Reiman,* 115 Ill.App.3d 879, 882, 71 Ill.Dec. 240, 242, 450 N.E.2d 928, 930 (1983).

*Gilroy v. Yellin (In re Gilroy)*, 235 B.R. 512, 517 (Bankr. D. Mass. 1999). *See also Morgan v. Comm'r of Internal Revenue*, 309 U.S. 78, 81, 60 S. Ct. 424, 426, 84 L. Ed. 585 (1940) ("The distinction usually made between a general and a special power lies in the circumstance that, under the former, the donee may appoint to anyone, including his own estate or his creditors, thus having as full dominion over the property as if he owned it; whereas, under the latter, the donee may appoint only amongst a restricted or designated class of persons other than himself.") (footnote omitted); *Shawmut Bank, N.A. v. Buckley*, 422 Mass. 706, 711, 665 N.E.2d 29, 33 (1996) ("One who has a general power of appointment is considered the owner of the assets for Federal tax purposes whether he or she exercises that power of not."); RESTATEMENT (THIRD) OF TRUSTS, § 56, cmt. b (2003) ("Trust property subject to a presently exercisable general power of appointment (a power by which the property may be appointed to the donee, including one in the form of a power of withdrawal), because of the power's equivalence to ownership, is treated as property of the donee of the power.").

Many courts frame the issue as "under what circumstances is a power to revoke or terminate a trust 'property' such that the trust *res* must be considered property of the estate." *Tougas*, 338 B.R. at 173. In *Tougas* the trust instrument permitted the debtor, who was also the sole trustee and only surviving settlor of the trust, to alter, amend or terminate the trust and upon its termination the trust's property would become the property of the settlor. In the final analysis it is

11

the power to cause a debtor to become the owner of the trust's property, either by changing the trust's beneficiaries or revoking the trust so that the trust property reverts to the debtor, that determines whether a trust's property is property of a debtor's bankruptcy estate.

Both the Realty Trust and the Family Trust instruments of creation give the VanBuskirks the right to treat the Trusts' property as if it was their own. The provision of the Realty Trust declaration that the "the Trustee shall also have every possible power and right to deal with the Trust property and estate, which an individual can have over his own property as fully and completely as if such individual powers were herein expressed" could not be more clear on this point. The declaration also provides that the Realty Trust may "be altered or amended in any respect or respects, by the Trustee acting hereunder" and that the beneficiaries may at the trustee's discretion receive income or principal "unless the Trust is revoked or otherwise amended by said Trustee". Based on these provisions the VanBuskirks have the power to name themselves as the only trust beneficiaries and then to terminate or revoke the trust which would result in their succeeding to outright ownership of unit 1.

The VanBuskirks maintain that the lack of an express provision in the Realty Trust declaration permitting them as trustees to terminate or revoke the trust is fatal to the chapter 7 trustee's argument.[5] They are mistaken for two reasons. First, even if the Realty Trust declaration did not expressly authorize the trustees to terminate or revoke the trust, the general power of appointment arising from the Realty Trust trustees' broad powers, including their ability to name themselves as the sole beneficiaries, is sufficient to make the

---

[5] There is no dispute that the Family Trust is revocable by its terms.

12

property of the Realty Trust property of the VanBuskirks' bankruptcy estate. This is the essence of the power of appointment. As the bankruptcy appellate panel in *Beatrice*, 296 B.R. at 581, explained:

> What is important is not whether the trustee has the power to revoke or terminate, or the precise language used in the trust document at issue to convey those concepts, but rather that the trust bestowed upon the trustee broad powers to modify the trust-including full and absolute power to sell the real estate, power to pledge the property to secure his personal debt, and power to add and eliminate beneficiaries at any time. The trust document need not use the specific term(s) "revoke" or "terminate" in order for the court to find that the trustee retained sufficient control over the trust res to make it property of the estate pursuant to 11 U.S.C. § 541(a).

Second, the Realty Trust declaration strongly suggests that it is both terminable and revocable by its trustees. Paragraph 6 of the declaration provides that beneficiaries have the right "to receive any distribution of income or principal or Trust property made by the Trustee in his discretion hereunder; and to the Trust property on the termination of the Trust, *unless said Trust is revoked or otherwise amended by said Trustee*." (Emphasis added). Paragraph 7 of the Realty Trust declaration states that "[t]he power to alter or amend the Declaration of Trust and the Trust hereby created, shall not be exhausted by a single exercise thereof, but may be exercised from time to time, and no exercise of said power shall prevent the subsequent exercise of the power to terminate the Trust." That the Realty Trust declaration invests its trustees with the power to treat Trust property as if it were the property of the trustees further undercuts the VanBuskirks' argument.

"[W]hen interpreting trust language, words should not be read in isolation and out of context; rather every effort should be made to ascertain 'the settlor's intent from the trust instrument as a whole and from the circumstances known to the settlor at the time the instrument was executed.'" *Behan*, 506 B.R. at 15. (citing *Hillman v. Hillman*, 433 Mass. 590, 593, 744

13

N.Ed.2d 1078 (2001)). I find that by its terms, in addition to being subject to amendment or alteration, the Realty Trust is revocable by the trustees at will.

The VanBuskirks rely upon *George v. Kitchens by Rice Bros., Inc.*, 665 F.2d 7 (1st Cir. 1981), to support their position that the chapter 7 trustee may not reach unit 1. In *George*, which was decided under the Bankruptcy Act of 1898, the United States Court of Appeals for the First Circuit found Massachusetts law to be clear that the power to revoke a trust, which was the only power retained by the trustee in that case, was not property of the bankruptcy estate. In *Tougas*, 338 B.R. at 176-77, the court discussed *George* and found it distinguishable for reasons that apply with equal force here, namely that the settlor-trustees in *Tougas* as in the case here retained a general power of appointment.

> This Court finds that *George* is distinguishable from the instant case for two reasons. In the first place, the Debtor [in *Tougas*] retained, in addition to the power to terminate the Trust as settlor, the power to alter and amend the Trust. Secondly, this Court's review of the holding in *George* compels the conclusion that it may be limited to circumstances where a debtor obtains a discharge based upon the exclusion of the trust property from her bankruptcy estate and then claims the benefit that would have resulted had the trust *res* been made available for distribution to creditors. The First Circuit, without mentioning judicial estoppel, appears to suggest that having obtained a benefit from the exclusion of the trust property from her bankruptcy estate, the debtor could not post-discharge assert that the property was part of her bankruptcy estate and protected by the discharge injunction, particularly where the creditor was seeking recovery only from the trust *res*.

I concur with the analysis in *Tougas* and conclude that on its facts *George* is distinguishable from the case before me.

Having determined that the VanBuskirks as trustees of the Realty Trust had the absolute power to revoke the trust, I need not address the chapter 7 trustee's argument that the MUTC

14

makes the Realty Trust revocable other than to note that MASS. GEN. LAWS ch. 203E, § 602(a),[6] upon which the chapter 7 trustee relies, only applies to trusts created after July 8, 2012, the effective date of the statute. St. 2012 ch. 140, § 64.[7]

*The Spendthrift Provisions*

Both Trust instruments contain spendthrift provisions which typically are designed to prevent creditors of a trust's beneficiaries from reaching the beneficiaries' interest in the trust. Spendthrift provisions are enforceable in Massachusetts. "In Massachusetts, if a spendthrift trust is validly created, then, in most instances, the beneficiary's creditors will have no greater claims to the trust property than the beneficiary." *Behan,* 506 B.R. at 15 (internal citations omitted). It is black-letter law, however, that a settlor may not keep *his* creditors from reaching the settlor's property by putting it in a spendthrift trust. *Felice*, 494 B.R. at 172 and cases cited therein. Thus the spendthrift provisions in the Trusts do not protect the VanBuskirks who were the settlors of both Trusts and whose powers of appointment are pervasive. *See, e.g., State St. Bank and Trust Co. v. Reiser*, 7 Mass. App. Ct. 633, 637, 389 N.E.2d 768 (1979) (noting "that as to property which a person could appoint to himself or his executors, the property could have been devoted to the payment of debts and, therefore, creditors have an equitable right to reach that property").

---

[6] MASS. GEN. LAWS ch. 203E, § 602 provides in relevant part:

>(a) Unless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust.

[7] St. 2012 ch. 140, § 64 provides:

>Subsection (a) of section 602 of chapter 203E of the General Laws shall not apply to trust instruments executed before the effective date of this act.

*Nominee Trusts*

What the VanBuskirks hoped to achieve by arguing that the Realty Trust is a nominee trust is unclear but the argument is easily debunked. In *In re Colbran, LLC*, 475 B.R. 289 (Bankr. D. Mass. 2012), I had occasion to examine the nature of nominee trusts:

> Perhaps the definitive article on the nature of nominee trusts in Massachusetts describes a nominee trust as "an arrangement for holding title to real property under which one or more persons or corporations, pursuant to a written declaration of trust, declare that they will hold any property they acquire as trustees for the benefit of one or more undisclosed beneficiaries." R. Birnbaum & J. Monahan, *The Nominee Trust in Massachusetts Real Estate Practice,* 60 Mass. L.Q. 364 (1976) (hereinafter "Birnbaum & Monahan"). Generally, the declaration of trust creating a nominee trust reserves to the trust beneficiaries the power to control and direct the actions of the trustee whose duties have been aptly described as "perfunctory." *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 893 (1st Cir.1979)….
>
> Because the beneficiaries of a nominee trust direct the actions of the trustee, the arrangement has been likened to a principal-agent relationship in which the "trustees are frequently seen as agents for the principals' convenience rather than as trustees in the more familiar fiduciary sense." *Apahouser Lock and Sec. Corp. v. Carvelli,* 26 Mass. App. Ct. 385, 388, 528 N.E.2d 133, 135 (Mass. App. Ct.1988). And there is no doubt that the beneficiaries may freely exercise their right to terminate the trust at any time thereby taking legal title to the trust res as co-tenants in proportion to their beneficial interests. *Johnston v. Holiday Inns,* 595 F.2d at 893 (quoting Birnbaum & Monahan).

*Colbran,* 475 B.R. at 295-97.

The hallmark of a nominee trust, therefore, is the control the beneficiaries may exercise to direct the trustee's actions. Neither the Realty Trust nor the Family Trust has such a structure. On the contrary, the VanBuskirks as the trustees of each trust are empowered to exercise control over the trust property and the trust in general, which includes the power to change beneficiaries. Indeed the declaration of trust of the Realty Trust expressly provides that its beneficiaries have no say in the management of the trust or its property. That the Realty Trust property happens to be real

property does not make the express trust a nominee trust when the trustees and not the beneficiaries retain control over the property.[8]

### *The Massachusetts Homestead Exemption and Beneficial Interests*

"Homestead laws are based on a public policy which recognizes the value of securing to householders a home for the family regardless of the householder's financial condition." *Dwyer v. Cempellin,* 424 Mass. 26, 29, 673 N.E.2d 863 (1996). It is firmly established that the Massachusetts homestead statute should be construed liberally in favor of the party or parties benefitting from the homestead. *Id.* at 30, 673 N.E.2d 863. "If it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *In re Dealey,* 204 B.R. 17, 18 (Bankr. C.D. Ill.1997).

In 2011 the Massachusetts homestead statute underwent a sweeping revision. Among other things, the revised statute added trust beneficiaries to the list of property owners entitled to homestead protection by defining "owner" as "a natural person who is a sole owner, joint tenant, tenant by the entirety, tenant in common, life estate holder or holder of a beneficial interest in a trust." MASS. GEN. LAWS ch. 188, § 1. The new statute also created the automatic homestead. For the first time, owners who do not record a declaration of homestead are nevertheless protected under the homestead statute up to $125,000 in equity. The statute provides:

---

[8] The *Lyons* case, cited by the VanBuskirks, supports the ruling that because they as trustees control the trust property, the trust is not a nominee trust. In *Lyons* the trustees' powers were more limited than in the Realty Trust as the trustees in *Lyons* had to provide an annual accounting to the beneficiaries and obtain permission of the beneficiaries before terminating the trust. Judge Feeney concluded, however, that the trustees' authority to determine distributive shares, to declare dividends and to distribute uninvested capital rendered those trustees more than mere agents of the beneficiaries and thus the trust was not a nominee trust. *Lyons*, 193 B.R. at 645.

> "Automatic homestead exemption", an exemption in the amount of $125,000 pursuant to section 4; provided, however, that: … (2) with respect to a home owned by multiple owners as tenants in common or as trust beneficiaries, the automatic homestead exemption shall be allocated among all owners in proportion to their respective ownership interests.

MASS. GEN. LAWS ch. 188, § 1.

Here, the VanBuskirks have a beneficial interest in the Realty Trust derivatively through their status as sole beneficiaries of the Family Trust which holds a 25% interest in the Realty Trust. Does the definition in the statute of owner to include "a natural person who is a holder of a beneficial interest in a trust" require that the natural person be the beneficiary of the trust that actually owns the real estate for which homestead protection is sought or can the natural person be the beneficiary of a different trust that itself is the beneficiary of the trust that owns the real estate? Needless to say, the chapter 7 trustee presses the former interpretation while the VanBuskirks urge the latter.

There is no hint in the statute's definition of owner that it should be narrowly construed to protect only individual beneficiaries of the title-holding trust. In fact, the statute refers to the "holder of a beneficial interest in *a* trust" suggesting any trust, not just *the* title-holding trust, should qualify. Mindful of the public policy considerations which pervade the homestead statute, I conclude that being the trust beneficiary of a downstream trust as the VanBuskirks are here does not disqualify them from claiming the automatic homestead exemption in the trust property, namely unit 1 at 11 Moffa Lane in Marlborough.

*Apportionment of the Automatic Homestead*

The VanBuskirks claim that they are entitled to the full $125,000 automatic homestead exemption in unit 1 because none of the other beneficiaries of the Realty Trust resides in the unit and thus none of the other beneficiaries may claim a homestead in the property. It is true that under

18

the statute, MASS. GEN. LAWS ch. 188, homestead protection, either automatic pursuant to § 4 or by declaration pursuant to § 3, is available only to owners who occupy or intend to occupy the home as a principal residence. It is conceded that Peter, Joseph P. and Lisa Sullivan, three out of the four beneficiaries of the Realty Trust, do not occupy or intend to occupy unit 1. But the way the Massachusetts homestead statute is now written, the amount of the homestead and the right to assert it have been unbundled. Section 1 governs the amount of the automatic homestead and how it is to be allocated among trust beneficiaries and it states:

> "Automatic homestead exemption", an exemption in the amount of $125,000 pursuant to section 4; provided, however, that: … (2) with respect to a home owned by multiple owners as tenants in common or as trust beneficiaries, the automatic homestead exemption shall be allocated among all owners in proportion to their respective ownership interests.

MASS. GEN. LAWS ch. 188, § 1. Allocation is based on ownership not occupancy. There is no ambiguity in the statute. The allocated automatic homestead amount available to beneficial owners of a home who do not occupy or intend to occupy it does not spill over to those beneficiaries who do. Those allocated amounts simply remain unused and unavailable. Because on their bankruptcy petition date the VanBuskirks owned a 25% interest in unit 1 derivatively through their status as beneficiaries of the Family Trust, they are entitled to an exemption in the aggregate equal to 25% of the automatic homestead amount, or $31,250.

## Conclusion

The chapter 7 trustee has succeeded to the rights and powers of the VanBuskirks, as trustees of the Realty Trust, to alter, amend or terminate the Trust. The Chapter 7 trustee's rights, however, are subject to the VanBuskirks' homestead exemption in unit 1, 11 Moffa Lane,

Marlborough, Massachusetts in the aggregate amount of $31,250. Thus the chapter 7 trustee's objection to the VanBuskirks' amended schedule C is sustained in part and overruled in part. A separate order will enter.

At Worcester, Massachusetts this 20th day of May, 2014.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:    Steven Weiss, Esq.
Shatz, Schwartz and Fentin, P.C
Springfield, MA
Chapter 7 trustee

Jordan L. Shapiro, Esq.
Shapiro & Hender
Malden, MA
for Joseph C VanBuskirk and Patricia A VanBuskirk